May it please the court my name is Wyatt Johnson I'm representing the appellants Jim Donoval and Sharon Hammer and if the court would indulge me just a moment I went to law school five miles away from here at Lewis and Clark it's taken me 20 years to actually get to argue in this courthouse. It's a beautiful courthouse that's for sure. I was always wondering when I'd actually get to argue it. This is the courthouse and this case went off the rails in three places. First it is the judgment on the pleadings on 12c that incorporated in documents that were first presented in the answer. I think that that's a problem. Second it was the granting of the summary judgment on the Liberty Stigma Plus claims. And third it was dealing with cases or issues that were clearly outside of the scope of any release waiver. Those namely claims against defendants Ruby and Briscoe and also an independent claim of James Donoval that were nowhere near the release that got dismissed as part of this case. I think the trickiest one quite frankly is the is the 12c is the motion for the judgment on the pleadings. Here's what the problem is is the cases have gone through and they've said okay judgment on the pleadings and you can talk about documents that are incorporated with the pleadings but if you read the cases carefully in truth when you're bringing that kind of a motion on an affirmative defense I believe that that needs to be documents and statements that are contained within the complaint. Because essentially it's a challenge to the substance of what the plaintiff is coming in and bringing forward. And the case has gone through and said okay well you can raise and you can bring a motion to motion for judgment on the pleadings on an affirmative defense. But I think it needs to be an affirmative defense that can be taken from the face of what it is that the non-movement has put before the court. And what I think that the problem was in this case. The problem in this case was that in defense the plaintiffs Donoville and Hammer came forward and they put forward a complaint and they attached certain documents. The defense raised the affirmative defense and attached a release, the supplemental release document. That was not a document that was put forward by the non-moving party in this case and they didn't present it and they didn't stand behind it. It is because their contention is yes that document is not valid for purposes of this case. That pulls to the second issue of going to the plaintiff. I didn't follow that last statement. The plaintiff didn't amend the second, the plaintiff didn't amend the complaint, didn't diligently amend the complaint after she saw the affirmative defense? She did. She actually, she sought leave to amend. She also sought leave to have the case held as summary judgment and bring documents into the record. Those were both denied. Right, because it wasn't diligent. Okay, well it was, I'm not, it was raised on an affirmative defense and she brought it in and she did request it. Okay, but regardless the, I'm not sure, I guess I'm not sure about the diligence issue. I wasn't, I'm not sure where that came in. Let me ask you a different question. So once the release is put before the court. Sure. My understanding is that the court then said in response to your client's desire to basically bring in extrinsic evidence about, because what was truly intended is that none of that would be relevant. And that decision seems right to me in light, particularly in light of what we saw from the Idaho Supreme Court. Well, and I understand that the Idaho Supreme Court has come through and said, yeah, as a matter of contract law, this release is good enough. I realize that. But I think that the Federal Court precedent, I think the Federal Court rule when you're dealing with a release says, okay, you've got two issues there. You've got one, the issue of State contract law, whether you've got a valid release. But then you have a second issue that goes beyond that, assuming that you've got a valid release, whether or not you still have a willful and knowing release based on the totality of the circumstances. That analysis was skipped. But there's no, I mean, maybe you can enlighten us. Sure. But as I understand it, your mishammer was represented by her husband. Yes. Who actually drafted the thing. None of that's in dispute. No. So how in the world could her decision to sign it not be knowing and voluntary? Because they actually disagree with what the substance of the document is. And that's what the Idaho Supreme Court said, no, you don't get to do that. But cannot bring in parole evidence to try to come up with a different meaning of what this thing says on its face. And that's not an issue. And that's true with respect to determining whether or not we've got a contract under Idaho State law. But the Federal standard, the totality of the circumstances issue, is a different question from the validity of the contract. No, I think you're blending together two issues. I'm talking about the knowing and voluntary decision to enter into a contract. That's one thing. And what I'm saying is that, as I understand it, there's no dispute that, yes, she knew what she was signing. Right? And she was represented by her husband. Now, the thing says whatever it says. And then if you wanted to get into, well, actually, we thought it meant something different. The ex-mayor thought it meant something different. That's what you're not permitted to do. You can't bring in parole evidence to vary the terms of an unambiguous writing. And this thing looks unambiguous to me. See, I think that that's a, and maybe let me, I think I understand what you're saying, but I think maybe, let me see if I can approach that. Here's where I think the difference is. The parole evidence rule comes in and says, look, once you have a written document, we don't care what you intended. We're going to say you intended what the document says for purposes of looking at the contract. I don't think that that displaces the totality of the circumstances. So I don't think, I think that when they're looking at the totality of the circumstances. We're talking about a pure issue of state law as to the validity of this release, right? No. Okay. So we're getting some other. That's where, that's where we're talking about. Because we're talking about a release applied in two different contexts. The release that was applied in the state court action dealt with state law issues and the Supreme Court came in and they made their decision based on their decisions. We don't agree with it, but it's done. But in federal court, that is not the same. You don't just look at the validity of the release based on state law. You also look at the totality of the circumstances to look at whether you had willful unknowing. That's a different inquiry. And the line of cases dealing with these go through and where you have releases that go through and they are unambiguous releases that say we waive all claims. What's the body of law? Normally these cases where federal court were applying state law on diversity or some other removal grounds. What is the body of federal release law? Sure. That we're looking at? We've got those. What case are we looking at? And in particular, in this jurisdiction we're looking at, it's the Taylor-Jones v. Tabor case. And there's the Jones v. Tabor case that brings that in and talks about the other factors. Now, I recognize that there's also a case, Bodefer, that follows that in the circuit. Where the Bodefer case went through, it did not seem to look at the totality of the circumstances analysis. But I don't think that the Bodefer case changed this rule on looking at that for the release. Do you have a citation for Jones? Is it in your brief, Jones v. Tabor? It is. It's in the brief. It's 1981, and I apologize. I don't have the citation. Okay. And the Bodefer case as well. But now, that was saying that 1983 cases where you're talking, and these are 1983-based claims, that these are Federal claims or constitutional claims, that the Federal courts are going to look and take a second look at the release and say, was this a, in substance, a willful and knowing release. They go beyond the form and they look at the substance. And that was. Now, that's not been the rule in all jurisdictions. Certainly, I had cited in a supplemental filing, I had cited a list of cases dealing with Title VII claims. And the cases in there, a couple of them were interesting, and the interesting discussion was under the Seventh Circuit, there were two Pierce cases. It was Pierce v. Santa Fe Railroad. And the court in there analyzed it and looked at it and said, okay, well, there are different ways that the courts have looked at this. There were some courts that went and they stopped with the state contract view, but the majority of the circuits gone through and they have looked at this bigger issue and said, we are not going to stop our analysis with the state law contract. We also look at the issue of the willful, the substantive willful and knowing waiver and the totality of the circumstances. So that's where I think it was important, and that's why I think that those issues did not get addressed and they were not brought forward on this 12C motion. Because what the substance of the district court's analysis was, is that we're going to look at the document itself and I'm not going to conduct the further willful and knowing waiver analysis. That's where I think that it was wrong. Where I think it is, is that the analysis that my clients are entitled to, the substantive analysis, and there's certain evidence in the record to go and address that, but then we get into a weighing issue, which is beyond what was put down on the 12C. So the other issue, I think that that is the trickiest issue. The second issue that was particularly problematic was the summary judgment on the claims, the litigation stigma plus claims. And it doesn't seem, based on the issues, that we have any question or dispute that we had stigmatizing statements. It seems that the argument is saying, well, essentially, the court ruled that these statements are true. And I think that this was a bit of an analytical shell game in doing that, because when you got the district court saying, well, the statements are true, in essence, what they're saying, well, the newspaper reported this statement accurately, but it doesn't go to the fact that the substance of the statements were that Sharon Hammer is involved in criminal conduct. Sharon Hammer is involved in city mismanagement. Now, the evidence put in the record says, no, that's not the case. There was evidence disputing it. She contested it. There was evidence that these were approved expenses. There was no mismanagement. This wasn't criminal. Now, whether or not ultimately, you know, those end up proving, you know, the ultimate test on whether those prove true, there's evidence to dispute it. We don't have to resolve ultimately the full extent of that. But it was placed out there. This is tarnishing information. She was entitled to have her opportunity to be heard and to correct that, and that was the substantive problem in this case. And I don't think the fact that a newspaper report is, that a newspaper is accurately reporting disparaging comments, I think that sidesteps the issue of still the substance of the comments, and I think that's where the analysis came off the rails there, is that it ignored the substance of the comments, and it got hung up on other issues. It's a genuine question of material fact for the jury to decide. Genuine question of material fact. Did the district court apply the proper test, or did the court mix up two different tests? The court, I think that the court, I think that the court went off, I think that what the court did is the court just went and found that there wasn't, the court weighed the evidence is what the court did. From what I read is that the court was essentially weighing the evidence, so it wasn't applying, it wasn't going through, and it wasn't doing, it wasn't making the inferences in favor of the non-movement as it was required. The court was, in fact, weighing the evidence or setting up sort of a straw man argument and talking about the wrong evidence. And so there's certainly a material question of fact. And then the remaining things. Do you want to save the remainder of your time for rebuttal? You're welcome to use the rest. I'll take the remainder on rebuttal. Okay, great. If I may counsel, perhaps during this time, if you could look up the citations for those Taylor versus Jones or whatever it was, because I searched Debris and I searched Westlaw and I haven't found anything. Thank you. Okay. Let's hear from the counsel for the defendants. May it please the court, counsel. My name is Kirtland Naylor. I represent the city of Sun Valley Defendants. In this particular case, I think the issue of the release has been clearly litigated. We have a state district court judge who found that the release was unambiguous. What's your response to the cases that counsel has just alluded to? That even if the court considers the totality of the circumstances in this case. Well, hang on. I think his point is that you can't consider that on a 12C motion because she didn't have any opportunity to bring in any evidence that relates to that issue. Oh, as far as the stigma plus? No. The release. We're talking about the release. Oh, and whether the federal court should rely on the state determination? No, we've completely. Okay. So the judge was just asking for the citation, right, for cases that your opponent has said. Say that in this context when you're dealing with the release of federal claims, claims under federal law, that we're not just doing a state law contract analysis, that rather there's this federal totality of the circumstances standard that has to be applied. Are we on the same page now? Yes. What's your response to those cases? That they don't apply in this particular case, and even if they did, the court did, could, and did deal with the totality of the circumstances dealing with some of the facts of the court. There are no facts on a 12C motion. No, on the pleadings. Yeah, there are no facts to deal with. All you did, as I understand it, is that you filed your answer, you attached the release, and that's the extent of the record. Right. And she wants to bring in, I'm not saying that there's merit to what she wants to argue, but she wants to bring in outside the four corners of the contract evidence, you know, that would be relevant to this totality of the circumstances analysis. So if he's right that that's required, I don't see how it could be done on a 12C motion. It could perhaps be done on a summary judgment motion. That's correct. Now, I don't believe that those cases cited require that that analysis take place because in this case you have the release, and this court can consider this release and the analysis done on the state law claims without having to follow that narrow exception that he is trying to argue. I don't believe that those cases stay the same. Why don't they apply here? Because those cases deal with some very specific issues of Section 1983 cases and federal claims, and in this particular case that those, I just don't believe that those would apply here. There are federal claims that she's trying to litigate, right? And I think at least one or more are brought under the rubric of 1983. That's correct. So the explanation you just gave for why those cases supposedly don't apply doesn't seem to match. Is there some other reason why? No, Your Honor. Those were raised in his citation letter, I believe, and following the Idaho Supreme Court case and decision that we provided to the court. So we didn't have an opportunity to brief those, but as I read those, I saw them to be pushing a not applicable based upon the, I can't articulate exactly the reasons, but it just seemed that there are a lot of different cases that were cited, but nothing that would be prevailing here or controlling here. Well, I think if I remember, they're all from out of circuit. That's one thing. So you're right, they're not controlling, but you don't have an explanation for why they shouldn't be deemed persuasive? No, because, well, the only reason that they wouldn't be persuasive in this particular case is, first of all, there is no precedent here in the Ninth Circuit. But also when court looks, I mean, I don't think that they have a good persuasive element to overcome the case law, that even in cases with federal cases, that the court looks to the state controlling law, for example, in this case with a contract and a release language. Can I ask you a different question about the release? How does it cover the claim brought by her husband? And how does it cover the claims against the two individual defendants? With regard to the individual defendants, the release was signed on January 23, 2012. And so it deals with, well, if you look at the complaint, there aren't any individual claims against Reby and Briscoe. What you have are retaliation claims, and those all relate to the employment action, which action could not have taken place but for the governmental entity. So there are no individual claims that have been raised against Briscoe and Reby. And so, therefore, all of their conduct was, as governmental officials, exercising the termination. So for that reason, the release, as to the governmental entity, applies to those factual allegations that really weren't individual claims against those particular individuals. As to Mr. Donoville, his claim, and I think Judge Lodge in footnote two of his motion to reconsider decision may have addressed this, but Mr. Donoville's claim is that the adverse action taken against his wife was based upon some animus or him running as a Republican in the most Democratic county in the state of Idaho. But he did not have a claim. So, in essence, if there was an error in including it, which it's really not clear that Judge Lodge used the release to dismiss Council 6 as to Mr. Donoville, as he referred in his footnote two, he said that in the reply brief, the plaintiff did not raise any allegation concerning Mr. Donoville's claim for Claim 6. But in any event, that would be a harmless error because there is no claim that Mr. Donoville has, and this Court would be able to grant the summary judgment as to that claim. Did that answer the Court's question on that? No, I guess I just got maybe confused, but let me see. So are you saying that the claims against Hriby and Briscoe were only in official capacity and therefore the release now bars those official capacity claims and that she made no individual capacity claims against those individuals? Yes, and to the extent that there were... And the husband's claim no longer exists because it stemmed from her claim, and since her claim is dismissed, now he has no claim. I'm sorry, which claim? The husband's claim. Correct. And if there was any claim for an individual liability prior to the January 23rd release, then that would also be released at that time. And was there a scheduling order in this case, setting a deadline for amended complaints to be filed? There was, but in the Court's order, I believe in the motion for summary judgment, if not in the motion for reconsideration, the Court found cause to amend, to allow him to consider whether an amendment would be appropriate. So he did not deny the amendment on that ground. What he found was it would be futile to have allowed him because the only reason plaintiffs were seeking the amendment was to put in all the evidence of the parole evidence. Thank you for that clarification. But I'm not sure which motion, I mean which decision the Court found in that. Maybe you can turn to your opponent's argument about the stigma plus claim. With regard to stigma plus, the Court didn't... Well, the Court found, assumed for purposes of the motion for summary judgment, that these may be stigmatizing statements. So the first prong of the test, he just moved on to. And then in considering whether there was a temporal nexus to the termination, and whether there was a, that the statements were substantially false, he went through, and I think we addressed this in group, kind of like types of statements that were alleged. Because we started with seven in the complaint and ended up with hundreds, quote, unquote, in this appeal. But you basically have those that were found, the statements made in judicial proceedings, and the Court found that those were not related to the termination. The press releases, if they were pre-termination, then if they were pre-termination, then the release would have applied. And otherwise, they were long after, as far as the temporal nexus, because they were months afterwards, dealing with the forensic audit. Or issues that had come up. And those, that would even be, I mean, that's just the press releases. He also found that the newspaper accounts were factually, I mean, were just reporting what had happened. And frankly, the plaintiffs have not alleged that any of those specific facts that were part of those statements that the Court relied on were substantially false. Mr. Reby's blog statements, those were made as a private individual. He made that very clear on the blog. That's part of the record. And as such, they would not be part of the Statement Plus consideration. So the Court took the allegations the best it could. The Court isn't required to hunt out and find every element of a claim. But should be pointed to those by the plaintiff. And in this case, we don't have that smoking gun, that statement, that the Court failed to appropriately analyze under the Stigma Plus test. Was this a jury, was there a request for a jury in this case? Or was it going to be a bench trial? Jury. So why was the judge making determinations of fact? He was, I believe, Judge Orell, that what he was saying was that no reasonable juror could find or infer that these statements were substantially false or that they were within a temporal nexus of determination. So I believe he has utilized the proper analysis for a motion for summary and judgment. Counsel, I have a left field question. This case has been going on longer than the Civil War. And I just wonder, and I know our Ninth Circuit has some mediation when your case is first filed. We've had other cases like this, and they go on 10, 13, 14 years. I'm just curious if the city and the plaintiffs, I know there's a lot of bad blood between them, that's very clear from the record we've read here. But has there been a serious attempt to try to resolve this case? With all due respect, Judge Owens, if the Court saw the entire record, which based upon the footnotes and the motion to augment and all of the supplemental pleadings you've seen, there have been approximately 12 lawsuits filed as a result of this. And the Supreme Court has sanctioned counsel in that particular case and awarded $60,000 in fees because of the nature of the prosecution of that case. So we're dealing with... I guess it's more of a yes or no question. Okay. If the answer is no, is the answer the city's not interested? Yeah, the answer is no. We have an attorney-husband. You don't need to say any more. It's just check the box and say no. Yeah, I appreciate that. But no, unless there's any other questions. Thank you. All right. We'll give you some time for a moment. Just quickly, I'll start with Judge Owens' request for the citations. Jones v. Tabor, 648, Fed 2nd, 1201. That's the Ninth Circuit, 1981. And the Bodefort, B-O-T-E-F-U-R v. City of Eagle Point, 7, Fed 3rd, 152, Ninth Circuit, 1983. Thank you. And so those are those cases. And I know they're in the briefs. I just couldn't find them where. Quickly, because it's being televised and I'm certain my clients are watching, I'm going to address the sanctions really quickly. The Supreme Court addresses attorney fees on a number of its cases by essentially they use the frivolous basis for awarding attorney fees. And that's just what the Idaho Supreme Court does. I don't think it should be taken as any matter of substance. Now, if I could move. We're not taking that into account. But this is a televised or streamed procedure, so I think the court should know. Now, moving on. On to the, I think, Ribby and Briscoe in stating, look, there were no individual claims. I think that's not right, because especially if you look at the, there are no claims if they are qualifiedly immune, if qualified immunity applies. Individual officers of a government entity are immune if they fall under the umbrella of qualified immunity, but they step outside of that when they basically willfully or knowingly violate somebody else's right. That wasn't addressed at all, and there's been no record of that. And so that issue is, that's where it goes too far. There is possibly, there is the possibility of individual liability, and it just didn't address that. Also, I think that in terms of the findings there, I don't think that the judge can make findings as a matter of law with regard to the temporal proximity or the substance of these statements. There's no bright line rule on these cases. The law says there is no bright line rule. It's a substantive issue. Also, when you're talking about temporal proximity, there are cases that recognize that a campaign of information can be just as stigmatizing as a single statement. And so even though you've got statements that consume a long period of time, to the extent that they're continuing about the same subject matter, it's a campaign, it's inappropriate for summary judgment, because there's just no hard line rules here. This is an issue that required some decision. And in terms of Mr. Donoval's claim, the claim was, it was retaliation for right of association. Essentially, Mr. Donoval was raising a constitutional claim, essentially claiming the harm against, that there was retaliation against his wife for things that he had done. And it's a constitutional claim. It's an interesting claim, I admit. But still, it's a claim, and it should not have been encompassed within the release, because this was Mr. Donoval's. But isn't it derivative of the, of his wife's own claim, such that if that claim had been released, he doesn't have anything to say? I mean, the validity of the release, that would be the, the wife would be as a party saying, I released my claims for circumstances A, B, and C. That's very different from a different party saying, I released my claims for circumstances A, B, and C. So, and that's it. Okay? Thank you so much. I've enjoyed my time in this boardroom. Great. Thank you for your argument. This case has just been argued. This will stand, be submitted, and we are now adjourned for the week. Thank you very much. Thank you.
judges: Watford, Owens, Navarro